**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

DELTA AIR LINES, INC.,

        Plaintiff,

v.

ADAM ALOI d/b/a FLYER LIFE

        Defendant.

Civil Action File
No.: _____

## COMPLAINT

Plaintiff Delta Air Lines, Inc. ("Delta"), by and through its undersigned counsel, hereby asserts its Complaint against Defendant Adam Aloi d/b/a Flyer Life ("Flyer Life"), and alleges as follows:

## NATURE OF THIS CASE

1.    Delta is the owner of the famous, federally registered trademarks incorporating the "DELTA" name, "DELTA AIRLINES," "SKYMILES," and the  and  designs, and other variations of the foregoing. Delta brings this action for infringement of its trademarks, false designation of origin and false representation, misappropriation and passing off, and unfair competition arising under the Lanham Act, Title 15 of the United States Code, Sections 1114, 1116, 1117, 1118, 1125, under Georgia state law, and at common law against Flyer Life

by virtue of Flyer Life's infringing use of Delta's marks, trade dress, and other intellectual property.

2.      Flyer Life is a travel-related website, which among other things, provides travel information and airline information to ordinary consumers, and offers travel rewards credit cards like the "Amex Gold Delta SkyMiles Credit Card."

3.      Flyer Life utilizes a logo (  ) that looks confusingly similar to Delta's famous and federally registered design marks in a number of ways.  As such, confusion is caused both by Flyer Life marketing travel rewards credit cards offering Delta SkyMiles rewards, and also by Flyer Life providing information on travel and the airline industry to ordinary consumers, including Delta customers.

4.      In doing so, Flyer Life has willfully and knowingly used and infringed upon Delta's intellectual property rights in an effort to gain a competitive advantage by causing actual and/or prospective customers of Delta to falsely believe that Flyer Life is authorized to act as a Delta representative, or is otherwise affiliated with or sponsored by Delta. Delta brings this action to preserve its registered marks and intellectual property rights and prevent harm to its current and prospective business relationships through entry of a preliminary and

permanent injunction prohibiting Flyer Life's illegal conduct, and an award of damages, including award of Delta's attorneys' fees. The value of damages relating to Flyer Life's conduct exceeds $75,000.

## PARTIES

5.      Plaintiff Delta Air Lines, Inc. is a corporation organized and existing under the laws of the State of Delaware with a principal place of business located at 1030 Delta Boulevard, Atlanta, Georgia 30320.

6.      Defendant Adam Aloi d/b/a Flyer Life, upon information and belief, is a citizen of Virginia, with a principal residence located at 1301 North Courthouse Road #1206, Arlington, Virginia 22201.

## JURISDICTION AND VENUE

7.      This Complaint alleges claims under the Lanham Act, making jurisdiction proper in this Court pursuant to Title 28 U.S.C. §§ 1331, 1338, and 1367. This Complaint alleges claims under §§ 32 and 43 of the Lanham Act. The Complaint also alleges state law claims under Georgia law that are so related to the federal question claim under the Lanham Act that they form part of the same case and controversy, thereby making the exercise of supplemental jurisdiction under Title 28 U.S.C. § 1367 appropriate.

8.      This Court also has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is, on information and belief, between citizens of different states.

9.      This Court has personal jurisdiction over Flyer Life in connection with the claims asserted in this Complaint because Flyer Life has committed tortious acts within the state and/or committed tortious injury in this state caused by an act or omission outside the state and engaged in other persistent course of conduct in this state. Among other things, among information and belief, patrons of Flyer Life and visitors to Flyer Life's website live in Georgia and are residents of Georgia, and Flyer Life has targeted those residents.

10.     Delta is informed and believes and, based thereon, alleges that venue is proper in this Court under 28 U.S.C. § 1391(a)(2), § 1391(b), and O.C.G.A. § 16-9-94 because Flyer Life has caused tortious injury within the Northern District of Georgia, because a substantial part of the infringing acts giving rise to the claims alleged herein arose, in whole or in part, within this judicial district. Flyer Life utilizes the infringing marks to advertise its goods and services in this judicial district.

- 4 -

## DELTA'S BUSINESS AND INTELLECTUAL PROPERTY RIGHTS

11.    Delta Air Lines, Inc., is the owner of numerous well-known registered marks, mark applications, and common law marks that include several versions of its famous DELTA and DELTA AIRLINES names and distinctive "Widget" design logo (    ,     ), and variations thereof (the "Delta Marks").

12.    Delta owns all right, title, and interest in and to the Delta Marks, including registered marks and mark applications, generally in connection with International Classes 38 and 39, for a wide range of air transportation services and associated travel goods and services.  Delta's federal registrations and applications include the following, among others:

| DELTA | Class 39 | US Registration No. 0,654,915 issued November 19, 1957, with date of first use in commerce of July 1945 and filing date of October 17, 1956 |
|---|---|---|
| DELTA AIR LINES | Class 39 | US Registration No. 0,970,418 issued October 9, 1973, with date of first use in commerce of July 1934 and filing date of August 22, 1972 |
| DELTA SHUTTLE | Class 39 | US Registration No. 1,703,774 issued July 28, 1992, with date of first use in commerce of September 1, 1991 and filing date of |

| | | September 9, 1991 |
|---|---|---|
| DELTA ONE | Class 39 | US Registration No. 4,769,776 issued July 7, 2015, with date of first use in commerce of December 8, 2014 and filing date of March 14, 2014 |
| SKYMILES | Class 39 | US Registration No. 1,968,255 issued April 16, 1996, with date of first use in commerce of April 7, 1994 and filing date of April 3, 1995 |
| SKYMILES EXPERIENCES | Class 35 | US Registration No. 4,745,107 issued May 26, 2015, with date of first use in commerce of August 28, 2014 and filing date of June 23, 2014 |
|  | Class 39 | US Registration No. 3,517,334 issued October 14, 2008, with date of first use in commerce of April 7, 2007 and filing date of May 16, 2007 |
|  | Class 39 | US Application No. 86/328,420, filed July 3, 2014 |
|  | Class 39 | US Application No. 86/298,499, filed June 3, 2014 |
|  | Class 39 | US Registration No. 1,143,697 issued December 16, 1980, with date of first use in commerce of January 3, 1979 and filing date of March 5, 1979 |

|  | Class 39 | US Registration No. 0,704,103 issued September 6, 1960, with date of first use in commerce of July 25, 1959 and filing date of November 25, 1959 |
|---|---|---|
|  | Class 39 | US Registration No. 2,556,013 issued April 2, 2002, with date of first use in commerce of March 23, 2000 and filing date of September 17, 2001 |
|  | Class 39 | US Registration No. 3,890,727 issued December 14, 2010, with date of first use in commerce of April 15, 2009 and filing date of March 5, 2009 |
|  | Class 39 | US Registration No. 4,749,531 issued June 2, 2015, with date of first use in commerce of March 1, 2014 and filing date of June 13, 2014 |
|  | Class 39 | US Registration No. 2,058,985 issued May 6, 1997, with date of first use in commerce of April 1960 and filing date of February 28, 1996 |
|  | Classes 38, 39 | US Registration No. 4,235,149 issued October 30, 2012, with date of first use in commerce of November 1, 2011 and filing date of October 6, |

| | | 2011 |
|---|---|---|
|  | Class 39 | US Registration No. 3,489,700 issued August 19, 2008, with date of first use in commerce of April 30, 2007 and filing date of May 16, 2007 |

13.     Representative federal registrations and applications owned by Delta relating to these services and products are attached respectively hereto as Exhibit A.

14.     Delta has used its word and design marks, individually and in combination, for many years throughout the country in connection with its wide range of products and services, which include the air transportation services, and other travel-related goods and services.  These goods and services include travel information and airline information, as well as credit card services, traveler reward programs, and Delta's frequent flyer loyalty program, called "SkyMiles".

15.     The Delta Marks, along with Delta's dozens of other registered federal trademarks, have been used in interstate commerce to identify and distinguish Delta's products and services for an extended period of time and serve as symbols of Delta's quality, reputation, and goodwill.

16.     Delta has, itself directly and/or through predecessors-in-interest and affiliated companies, offered and sold the aforesaid services as well as other

services related to the foregoing, under the aforesaid Delta Marks in interstate commerce since at least as early as July 1959, and such use has not been abandoned and has been valid and continuous to the present day.

17.    In addition to the trademark protection rights afforded to Delta by virtue of its registered marks and pending mark applications discussed above, Delta's broad common law rights also extend to cover its Delta Marks, including its "Widget" design logo in various iterations, for services including the services listed on the registration certificates, as well as related services.  Delta has used the "Widget" logo design in commerce, with the triangle tilted to point towards the upper right, with a hue of red and the right half of the triangle shaded, and such use has not been abandoned and has been valid and continuous to the present day.  Copies of examples of Delta's "Widget" design logo and the Delta word marks as used in commerce are attached hereto as Exhibit B.

18.    Delta has tremendous good will.  It is an iconic global brand, and its products and services have acquired renown and a devoted fan base throughout the world and the country, including in Georgia.

19.    Through its airline, company store, and online store, Delta has sold and continues to sell goods and services, throughout the world and the United States, including in Georgia.

- 9 -

20.     Delta's designs also constitute protected trade dress, including, among others, the color, shading, and angles of its marks and designs, the combination of its Delta Marks, and the location of its Delta Marks on its products ("Delta's Trade Dress").  Delta's trade dress is distinctive, original, and nonfunctional and, has constituted valuable and protectable trade dress of Delta since a time prior, and at all material times, to the acts of Flyer Life complained of herein.  Even if Delta's trade dress is not inherently distinctive, it has acquired secondary meaning within the online market in which Flyer Life advertises, offers, and distributes its goods and services.

21.     Delta makes use of its Delta Marks (note, the "Delta Marks" include Delta's Trade Dress) in interstate commerce by displaying them on its airline and airline products, website, goods, signage, promotional materials and advertising media.

22.     Delta has invested hundreds of millions of dollars developing, advertising and otherwise promoting the Delta Marks in the United States in an effort to create a strong association between Delta's products and services, good will, and its Delta Marks.

23.     As a result of the care and skill exercised by Delta in the conduct of its business, the high quality of Delta's products and services offered under its

Delta Marks, and the extensive advertising, sale, and promotion of Delta's products bearing its Delta Marks, its Delta Marks have acquired secondary meaning in the United States and in Georgia.

24.     The Delta Marks are strong, arbitrary marks that warrant broad protection in both related and unrelated product and/or service classes.

25.     Since the date of First Use of the Delta Marks, Delta has manifested the intent to maintain exclusive ownership of the Delta Marks and to continue use of the Delta Marks in interstate commerce in connection with Delta's products and services.

26.     Delta has carefully monitored and policed the use of the Delta Marks and maintains tight control over the use of both.

## FLYER LIFE'S BUSINESS AND INFRINGING ACTIVITIES

27.     Upon information and belief, Flyer Life owns and operates a business named flyerlife.com, a travel website which intentionally features a triangular logo confusingly similar to the Delta Marks.

28.     Upon information and belief, Flyer Life did not exist before 2014.

29.     Flyer Life, via its online website flyerlife.com, provides travel information and advice to customers, and offers travel rewards offers to customers

who sign up for sponsored credit cards, like the Amex Gold Delta SkyMiles Credit

Card, for example:



30.     Flyer Life has used, and continues to use, without authorization from

Delta, a mark confusingly similar to the Delta "Widget" logo, in connection with,

and in close proximity to, the Delta Marks (including the Delta name, the "Widget"

logo, and SkyMiles) and Delta SkyMiles credit card offer, in connection with Flyer

Life's website and advertising of its goods and services (collectively, the "Counterfeit Mark").

31. Flyer Life's unlicensed use of the Counterfeit Mark is a colorable imitation of the Delta Marks that is likely to cause confusion or mistake or to deceive consumers into believing that Flyer Life is sponsored by, affiliated with, or otherwise authorized to represent Delta.

32. Flyer Life utilizes the Counterfeit Mark as follows, for example:



33. Delta has multiple federal trademark registrations for its "DELTA" word mark and widget logo, which predate the existence of Flyer Life's business by many years, including U.S. Reg. No. 3,517,334.

34. Delta did not authorize, and would never authorize, Flyer Life to use the Counterfeit Mark or any other colorable imitations of the Delta Marks.

35. Delta recently discovered that Flyer Life was using the Counterfeit Mark in the operation of its online business.

36.    Even a cursory review of Flyer Life's website and the marks Flyer Life is using to advertise its goods and services demonstrates that Flyer Life has co-opted Delta's Marks, in an attempt to trade on the good will of Delta.

37.    On June 25, 2015, Delta's counsel wrote to Flyer Life advising that its use of the Counterfeit Mark is likely to cause customers to believe that Flyer Life's online travel business is associated or affiliated with or sponsored by Delta.  In this letter, Delta demanded that Flyer Life cease further use of the Counterfeit Mark. This correspondence is attached hereto as Exhibit C.

38.    Flyer Life ignored this letter, requiring Delta to institute an opposition proceeding with the United States Patent and Trademark Office.  Flyer Life then ignored and defaulted on the opposition proceeding, forcing Delta to then protect its valuable intellectual property by commencing this legal action.  The default judgment entered against Flyer Life is attached hereto as Exhibit D.

39.    Flyer Life actively continues to use the Counterfeit Mark with full knowledge of Delta's ownership of the Delta Marks, including its exclusive right to use such intellectual property and the goodwill associated therewith.

40.    Flyer Life is engaging in the above-infringing and tortious activities knowing and intentionally for the purpose of trading on the good will and reputation of Delta.

- 14 -

41.   Unless stopped, this false use of the Counterfeit Mark or similarly deceptive designations, may damage Delta's relationships with its current and prospective customers, may disrupt its business opportunities, and may damage its reputation and the value of its established marks and trade dress.  Flyer Life may also unlawfully and improperly obtain information from Delta's customers that may place Delta at an unlawful competitive disadvantage.

42.   Flyer Life's unauthorized use of Delta's marks and trade dress has caused and is likely to continue to cause confusion, mistake and deception sufficient to constitute infringement of Delta's rights in and to its service marks and trade names and to constitute unfair competition, irreparably damaging Delta and its rights in and to its service marks and trade names. Such confusion, mistake and deception is clearly not inadvertent and in good faith, but is intentional and willful.

## COUNT I
### FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

43.   Delta incorporates by reference the previous allegations of the Complaint as though fully set forth herein.

44.   Delta exclusively owns the Delta Marks.

45.   Delta has used the Delta Marks in interstate commerce in connection with the advertising and promotion of its aviation and travel-associated goods and

services, including credit cards bearing Delta's marks in connection with its SkyMiles frequent flyer loyalty program.

46.     Flyer Life has used, and continues to use, the Counterfeit Mark and colorable imitations of the Delta Marks without Delta's authorization in interstate commerce in connection with the operating of its online travel business and website.

47.     The actions of Flyer Life described herein constitute infringement of Delta's established service marks and trade names in violation of section 32(b) of the Lanham Act, 15 U.S.C. § 1114(1).

48.     Flyer Life's willful, deliberate and unauthorized use of Delta's established Delta Marks has caused confusion and is likely to continue to cause confusion, mistake and deception in that consumers are likely to associate and believe Flyer Life is associated with, connected to, affiliated with, authorized by, endorsed by, and/or sponsored by Delta, in violation of Section 32(b) of the Lanham Act, 15 U.S.C. § 1114(1).

49.     As a direct and proximate result of Flyer Life's unauthorized use of the Counterfeit Mark, Flyer Life has damaged and will continue to damage Delta's good will and reputation, which is likely to cause a loss of sales and profits for Delta.  Flyer Life's actions have caused and will continue to cause irreparable

harm to Delta and to the public, which is confused, or is likely to be confused, by Flyer Life's unauthorized use of Delta's established Marks, unless restrained and enjoined by this Court.  Delta has no adequate remedy at law to prevent Flyer Life from continuing its infringing actions and from injuring Delta.

50.    As a further direct and proximate result of Flyer Life's actions, Delta has been damaged and will continue to sustain damage and is entitled to receive compensation arising from its lost sales, lost profits, and efforts necessary to minimize and/or prevent customer confusion, in an amount to be proven at the time of trial.  In addition, Delta is entitled to disgorge Flyer Life's profits, and is entitled to interest and to its attorneys' fees and costs incurred bringing this action, all in an amount to be proven at the time of trial.  Delta is further entitled to injunctive relief as set forth above, and to all other and further forms of relief this Court deems appropriate.

51.    Flyer Life has acted in bad faith and/or willfully in adopting the Counterfeit Mark, and other colorable imitations of the Delta Marks in connection with the operating of its travel business in an effort to reap the benefits of the good will associated with the Delta Marks.

52.    The damages sustained by Delta as a result of the conduct alleged herein should be trebled in accordance with 15 U.S.C. § 1117(b).

- 17 -

## COUNT II
### FEDERAL TRADE DRESS INFRINGEMENT (15 U.S.C. § 1125(A))

53.    Delta incorporates by reference the previous allegations of the Complaint as though fully set forth herein.

54.    Delta's Trade Dress is inherently distinctive.  Even if Delta's Trade Dress is not inherently distinctive, it has acquired secondary meaning.  By copying, imitating and infringing Delta's protected Trade Dress in its Counterfeit Mark and unauthorized products and advertisements, Flyer Life has engaged in trade dress infringement in violation of the Lanham Act, 15 U.S.C. § 1225(a).

55.    Flyer Life's imitating and infringing use of identical and substantially similar designs and placement to Delta's Trade Dress has created and continues to create a likelihood of confusion, mistake or deception as to the affiliation, connection, association, origin, sponsorship, approval, commercial activities, nature, characteristics and qualities of Flyer Life's goods and services relative to Delta's goods and services.

56.    Flyer Life knew or had reason to know of Delta's distinctive trade dress - and deliberately copied this trade dress for Flyer Life's commercial advantage.

57.    By reason of Flyer Life's unlawful actions, Delta has suffered and continues to suffer irreparable harm including, but not limited to, detriment and

- 18 -

diminution in value of its Delta Trade Dress for which there is no adequate remedy at law.  Accordingly, Delta is entitled to an injunction against Flyer Life, pursuant to 15 U.S.C. § 1116.

58.     The aforesaid acts constitute federal trade dress infringement in violation of Title 15 U.S.C. § 1125(a).

## COUNT III
### FEDERAL TRADEMARK DILUTION – BLURRING AND TARNISHMENT
### (15 U.S.C. § 1125(C))

59.     Delta incorporates by reference the previous allegations of the Complaint as though fully set forth herein.

60.     The Delta Marks are famous and distinctive in the United States as that term is used in § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

61.     Delta has taken reasonable steps to preserve the integrity and image of the Delta Marks, including carefully monitoring and policing the use of the Delta Marks and maintaining tight control over the use of the Delta Marks.

62.     Flyer Life's intentional commercial use of the Counterfeit Mark, including on its flyerlife.com website, through which Flyer Life offers goods and services which are inferior to those of Delta and its authorized representatives, is likely causing and will continue to likely cause dilution, including blurring and tarnishment of Delta's famous and distinctive Delta Marks.

63.     Flyer Life began using the Counterfeit Mark long after the Delta Marks became famous.

64.     Flyer Life's commercial use of the Counterfeit Mark demonstrates Flyer Life's willful intent to trade on Delta's reputation and to cause dilution of the Delta Marks.

65.     Flyer Life's commercial use of the Counterfeit Mark demonstrates Flyer Life's willful intent to trade on Delta's reputation and to cause dilution of the Delta Marks.  Any association with Flyer Life made by consumers has an adverse effect on Delta's excellent reputation.

66.     Flyer Life's unauthorized use of the Counterfeit Mark and colorable imitations of the Delta Marks has caused, and continues to cause, irreparable injury to Delta's business reputation and good will through Flyer Life's dilution of the distinctive quality of the Delta Marks, as to the affiliation, connection or association of Flyer Life with Delta; the origin, sponsorship, or approval of Flyer Life by Delta; and/or the nature, characteristics, or qualities of Flyer Life's goods that bear and/or rendering of services in connection with the Counterfeit Mark.

67.     The aforesaid acts constitute federal trademark dilution in violation of Title 15 U.S.C. § 1125(c).

## COUNT IV
### FEDERAL COMMON LAW TRADEMARK INFRINGEMENT

68.    Delta incorporates by reference the previous allegations of the Complaint as though fully set forth herein.

69.    The actions of Flyer Life described herein constitute infringement of Delta's trademark rights under federal common law.

70.    As a direct and proximate result of Flyer Life's actions, Delta has suffered and will continue to suffer general damages according to proof at trial.

71.    As a further direct and proximate result of Flyer Life's use of the Counterfeit Mark, Flyer Life has damaged and will continue to damage Delta's good will and reputation, and is likely to cause lost sales and lost profits to Delta. Flyer Life's actions have caused and will continue to cause irreparable harm to Delta and to the public confused or likely to be confused by Flyer Life's use of the Counterfeit Mark, unless restrained and enjoined by this Court. Delta has no adequate remedy at law to prevent Flyer Life from continuing its infringing actions and from injuring Delta.

72.    As a further direct and proximate result of Flyer Life's actions, Delta has been damaged and is entitled to receive compensation arising from its lost sales, lost profits, and for all expenses necessary to minimize and/or prevent customer confusion. Delta is also entitled to disgorge Flyer Life's profits, to

interest, and to recovery of its attorneys' fees and costs in bringing this action, all in an amount to be proven at the time of trial.  Delta is further entitled to injunctive relief as set forth above, and to all other and further forms of relief this Court deems appropriate.

## COUNT V
## FEDERAL UNFAIR COMPETITION (15 U.S.C. § 1125(A))

73.     Delta incorporates by reference the previous allegations of the Complaint as though fully set forth herein.

74.     Upon information and belief, Flyer Life's use of the Counterfeit Mark constitutes a false designation of origin, a false or misleading description of fact, and/or false or misleading representation of fact, and has caused and is likely to cause confusion, mistake, and/or deception as to the affiliation, connection or association of Flyer Life with Delta; the origin, sponsorship, or approval of Flyer Life by Delta; and/or the nature, characteristics, or qualities of Flyer Life's goods that bear and/or rendering of services in connection with the Counterfeit Mark.

75.     The aforesaid acts constitute federal unfair competition in violation of Title 15 U.S.C. § 1125(a).

## COUNT VI
### STATE UNFAIR COMPETITION

76.     Delta incorporates by reference the previous allegations of the Complaint as though fully set forth herein.

77.     Under Georgia law, "the term unfair competition is a nomenclature for the doctrine that one cannot pass off his goods as those of another.  Thus, the law of unfair competition prohibits 'passing off, or attempting to pass off, on the public, the goods or business of one person as and for the goods or business of another.'"  *SCQuARE Intern., Ltd. v. BBDO Atlanta, Inc.,* 455 F. Supp. 2d 1347, 1366 (N.D. Ga. 2006) (citations omitted).

78.     Flyer Life has engaged in unfair competition by misleading consumers by falsely representing that Flyer Life is an authorized representative of or is otherwise affiliated or associated with Delta and uses Delta's Marks with Delta's authorization, when Flyer Life does not have any such authorization from Delta.

79.     Consumers viewing the Counterfeit Mark and goods and services advertised and offered by Flyer Life have been and will continue to be confused as to the source of these goods and services and/or have been and will be under the false impression that the goods and services originated from Delta, or were authorized by Delta to be offered and distributed by Flyer Life.

- 23 -

80.    Under the common law of Georgia, Flyer Life's conduct constitutes unfair competition and has damaged Delta.

## COUNT VII
### <u>VIOLATIONS OF THE GEORGIA DECEPTIVE TRADE PRACTICES ACT (O.C.G.A. § 10-1-372)</u>

81.    Delta incorporates by reference the previous allegations of the Complaint as though fully set forth herein.

82.    Georgia's Deceptive Trade Practices Act essentially prohibits "passing off" one's goods or services as those of another.  The Act provides, in relevant part, that:

> (a) A person engages in a deceptive trade practice when, in the course of his business, vocation, or occupation, he:
>
> > (1) Passes off goods or services as those of another; [or]
> >
> > (2) Causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services.

O.C.G.A. § 10-1-372.

83.    Flyer Life has violated Georgia's Deceptive Trade Practices Act by misleading consumers by falsely representing that Flyer Life is an authorized representative of or is otherwise affiliated or associated with Delta and uses Delta's

Marks with Delta's authorization, when Flyer Life does not have any such authorization from Delta.

84.     Consumers viewing Flyer Life's website or the goods or services advertised and offered by Flyer Life have been, are likely to be, and will continue to be confused as to the source of the goods or services and/or have been and will be under the false impression that the goods or services originated from Delta, or were authorized by Delta to be offered and distributed by Flyer Life.

85.     Delta has been damaged by Flyer Life's and violation of Georgia's Deceptive Trade Practices Act.

## COUNT VIII
### TORTIOUS INTERFERENCE WITH CONTRACTUAL/BUSINESS RELATIONSHIP WITH LEGITIMATE DELTA CUSTOMERS

86.     Delta incorporates by reference the previous allegations of the Complaint as though fully set forth herein.

87.     Delta has a contractual/business relationship with legitimate customers of its goods and services, including its website, travel information, airline information, and with those who participate in Delta's SkyMiles frequent flyer rewards program, including those who utilize SkyMiles travel rewards credit cards.

- 25 -

88.    Flyer Life is a stranger to the contractual/business relationship that Delta has with legitimate Delta customers.

89.    Flyer Life's intentional conduct as alleged herein, including misrepresenting to Delta customers that flyerlife.com is a website owned, maintained, or authorized by Delta, and representing to legitimate Delta customers that Flyer Life is authorized by Delta to offer travel information and airline information under the confusingly similar Counterfeit Mark, was improper and wrongful conduct without privilege.

90.    Flyer Life acted purposely as alleged herein and with malice with the intent to injure to Delta's relationship with legitimate Delta customers.

91.    Flyer Life's intentional conduct and interference as alleged herein has retarded performance of the duties under Delta's agreement with Delta's customers and/or made the performance more difficult and/or expensive.

92.    Flyer Life's intentional and wrongful conduct and interference as alleged herein has and continues to cause Delta to suffer damages in an amount to be determined by the trier of fact.   Flyer Life's tortious conduct proximately caused the damage to Delta.

93.    Flyer Life's misconduct and interference is willful and demonstrates a total want of care constituting a conscious indifference to the consequences of its

activities.   Thus, Delta is entitled to punitive damages in an amount to be determined by the enlightened conscience of an impartial jury.

94.   By its intentional conduct as alleged herein, Flyer Life has acted in bad faith, been stubbornly litigious and has caused Delta unnecessary trouble and expense, entitling Delta to recover all costs in prosecuting this action including, but not limited to, reasonable attorneys' fees, under O.C.G.A. § 13-6-11.

### COUNT IX
### TORTIOUS INTERFERENCE WITH CONTRACTUAL/BUSINESS RELATIONSHIP WITH LEGITIMATE, AUTHORIZED DELTA REPRESENTATIVES

95.   Delta incorporates by reference the previous allegations of the Complaint as though fully set forth herein.

96.   Delta has a contractual/business relationship with legitimate, authorized Delta representatives.

97.   Flyer Life is a stranger to the contractual/business relationship that Delta has with authorized Delta representatives, which have been approved and/or licensed by Delta to offer travel websites, to provide travel information and airline information, and/or to sell credit cards that are a part of Delta's SkyMiles frequent flyer loyalty program.

98.   Flyer Life's intentional conduct as alleged herein, including its unauthorized offering, advertising, and distributing under the Counterfeit Mark to

actual and/or potential customers of Delta's authorized representatives, was improper and wrongful conduct without privilege.

99.   Flyer Life acted purposely as alleged herein and with malice with the intent to injure to Delta's relationship with its authorized representatives.

100.   Flyer Life's intentional conduct and interference as alleged herein has retarded performance of the duties under Delta's agreement with its authorized representatives and/or made the performance more difficult and/or expensive.

101.   Flyer Life's intentional and wrongful conduct and interference as alleged herein has and continues to cause Delta to suffer damages in an amount to be determined by the trier of fact.   Flyer Life's tortious conduct proximately caused the damage to Delta.

102.   Flyer Life's misconduct and interference is willful and demonstrates a total want of care constituting a conscious indifference to the consequences of its activities.   Thus, Delta is entitled to punitive damages in an amount to be determined by the enlightened conscience of an impartial jury.

103.   By its intentional conduct as alleged herein, Flyer Life has acted in bad faith, been stubbornly litigious and has caused Delta unnecessary trouble and expense, entitling Delta to recover all costs in prosecuting this action including, but not limited to, reasonable attorneys' fees, under O.C.G.A. § 13-6-11.

- 28 -

**COUNT X**
**TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONSHIPS**

104.   Delta incorporates by reference the previous allegations of the Complaint as though fully set forth herein.

105.   Delta has prospective contractual and business relationships with legitimate representatives and with customers.

106.   Flyer Life acted purposely as alleged herein and with malice with the intent to injure to Delta's prospective relationships with potential customers of Delta or its authorized representatives.

107.   Flyer Life's intentional conduct as alleged herein was improper and wrongful conduct without privilege.

108.   Flyer Life's intentional conduct and interference as alleged herein has retarded performance of the duties under Delta's agreement with legitimate representatives and/or potential customers seeking to purchase or utilize Delta goods and services from authorized representatives and/or made the performance more difficult and/or expensive.

109.   Flyer Life's intentional conduct and interference as alleged herein has disrupted business relations that otherwise were reasonably likely to develop.

110.   Flyer Life's intentional and wrongful conduct and interference as alleged herein has and continues to cause Delta to suffer damages in an amount to

be determined by the trier of fact.  Flyer Life's tortious conduct proximately caused the damage to Delta.

111.   Flyer Life's misconduct and interference is willful and demonstrates a total want of care constituting a conscious indifference to the consequences of its activities.   Thus, Delta is entitled to punitive damages in an amount to be determined by the enlightened conscience of an impartial jury.

112.   By their intentional conduct as alleged herein, Flyer Life has acted in bad faith, been stubbornly litigious and has caused Delta unnecessary trouble and expense, entitling Delta to recover all costs in prosecuting this action including, but not limited to, reasonable attorneys' fees, under O.C.G.A. § 13-6-11.

## COUNT XI
### UNJUST ENRICHMENT

113.   Delta incorporates by reference the previous allegations of the Complaint as though fully set forth herein.

114.   Upon information and belief, Flyer Life has received and continues to receive profits and other benefits from its unauthorized marketing, advertising, and distribution of  goods and services bearing the Counterfeit Mark and other colorable imitations of the Delta Marks.  Those profits and other benefits, to the extent that they have been and/or are being generated by Flyer Life's infringing use of the Delta Marks, rightfully belong to and should have been received by Delta.

- 30 -

115. By reason of its infringing actions, Flyer Life has been unjustly enriched at Delta's expense in an amount to be proved at trial.

116. All profits and other benefits that have been received by Flyer Life from unauthorized marketing, advertising, and distribution of goods and services bearing the Counterfeit Mark and other colorable imitations of the Delta Marks, are now due and owing to Delta.

## PRAYER FOR RELIEF

**WHEREFORE**, Delta demands the entry of judgment:

(a)    declaring that Flyer Life, its agents, servants, employees, attorneys and any related companies, and all persons in active concert or participation with one or more of them, be preliminarily and permanently enjoined and restrained from unlawfully using the Delta Marks, and any mark that is confusingly similar to the Delta Marks, including the Counterfeit Mark;

(b)    requiring Flyer Life to deliver to Delta any and all products or other physical items in Flyer Life's possession that infringe upon the Delta Marks;

(c)    declaring that the Delta Marks have been infringed by Flyer Life's acts under 15 U.S.C. § 1114 and federal common law;

(d)    awarding compensatory, consequential and punitive damages in favor of Delta and against Flyer Life, together with interest thereon;

(e)     disgorging from Flyer Life all profits gained as a result of Flyer Life's acts of unfair competition;

(f)     awarding Delta prejudgment interest to the maximum extent recoverable by contract or law;

(g)     awarding Delta be awarded all costs of this action and attorneys' fees; and

(h)     granting Delta all other and additional relief as justice may require or as the Court may deem appropriate.

Respectfully submitted, this 14th day of January, 2016.

By:   */s/ Jeffrey R. Baxter*
      Jeffrey R. Baxter
      Georgia Bar No. 142356
DENTONS US LLP      *jeff.baxter@dentons.com*
303 Peachtree Street, NE. Suite 5300
Atlanta, GA  30308
Telephone:  (404) 527-4000      *Attorneys for Plaintiff*
Facsimile:   (404) 527-4198      *Delta Air Lines, Inc.*